Bockes, J.
This is an action of slander, and was tried before me at the Saratoga Circuit, September, 1865. The plaintiff had a verdict for one'hundred and fifty dollars. On the trial, the question arose, whether the words charged and proved imputed the crime of perjury, inasmuch as the words related (as it was insisted),- to a statement made by the plaintiff, when testifying as a witness on a trial before a justice of the peace, wholly irrelevant to the issue. A motion for non-suit was made on this ground, but the question was reserved by consent of the parties, and I then held, for the puiposes of the trial, that the words charged in the complaint and proved, had reference to material testimony given by the plaintiff on the trial before the justice, and left to the jury only the question of damages.
The plaintiff now moves for judgment on the verdict, and the defendant at the same time renews his motion for non-suit, or dismissal of the complaint, reserved at the trial.
The charge against the plaintiff was, that he swore false—or swore to a lie—in an action then lately tried before Esq. Cole. It is not actionable to say of a person that he swore falsely, or swore to a lie, unless it be said in reference to his testimony given on the trial of a cause, or in some proceeding where an oath is by law authorized to be administered; and not then, unless the charge relate to some statement material and pertinent to the issue or subject matter of examination. To authorize a recovery for-the uttering of the words charged in the complaint, the plaintiff was bound to show the trial before Esq. Cole, that he had jurisdiction, that the plaintiff was sworn, and gave material testimony on the trial, and that the words were spoken by the defendant of and concerning the plaintiff, and of and concerning his testimony so given on such trial (1 Johns., 10; 20 Johns., 344; 9 Cow., 30; 1 Wend., 475; 11 Wend., 140; 12 Wend., 500; 16 Wend., 450; 14 Wend., 120; 3 Hill, 572; 3 Barb., 625 ; 31 Barb., 106). It will be presumed that the party, if sworn and examined as a witness on the trial of a cause, gave material testimony. Such is the presumption of law. So, if a person charge another with swearing falsely, referring to his testimony given on the trial of a cause’ in a court of justice, it imports the crime of perjury, because of the presumption of law that his tes *277 timony was material, and pertinent to the issue.- In such case, the materiality of the testimony stands proved by legal intendment, and no affirmative proof of the fact is nécessary (3 Hill, 572; 3 Barb., 625). But it is competent for the defendant to rebut this legal presumption. He may show, if he can, that the testimony of the plaintiff was wholly and entirely immaterial, or that the part of his testimony to which the charge of false swearing related—in case it related to part only—was immaterial, and thus defeat the action (see eases above died). And, indeed, the defence above suggested is available if it can be predicated on the whole cause at the close of the proof.. If it then clearly appears that the charge of false swearing related to immaterial evidence, on which perjury could not be predicated, a recovery cannot be allowed, and a motion for non-suit or dismissal of the complaint should be granted. I am here speaking of cases like the present, where the words counted on are. not actionable of themselves, but are made so by their relation to extraneous circumstances, which are required to be averred and proved. Holding these principles and rules of law in mind, how stands this case ? There was an action tried before Esq. Cole, of which he had jurisdiction, wherein the plaintiff was sworn, and gave evidence as a witness, material to the issue. In the course of his examination, he testified, in substance, that he had not been to Crescent trying to get the school for Miss Knickerbocker. The defendant, in speaking of the plain.tiff, and in relation to that part of his evidence above given, said he had sworn to a lie—had sworn false. I assume that the charge of false swearing was made in regard to the particular part of his testimony here stated. It was so understood by me at the trial, and on referring to the evidence, such must be I think, its fair and necessary construction and import. Mr. Pease says, “ I heard the defendant make charges against the plaintiff in December last. He said William had sworn to a lie; and he could prove it by Mr. Haight. He said it was in a case between the Trustees and Miss Benedict. This was said in Mr. Ostrom’s house.” On his cross-examination Mr. Pease further stated: “ He told me what he swore to a lie about. He said he swore that he had not been to Cohoes trying to get the school for Miss Knickerbocker. He said the question was asked him, and he said no.” The other witness, Mr. Yan Yrankin, said, “About April, 1864, the defendant was *278 at my house, and began to talk about the school difficulty between Miss Benedict and the trustees. He said he did not know what to think of Isaac, for he was asked the question on that trial, whether he had not been to Crescent to get a school for Miss Knickerbocker. He said Isaac answered no. He added, a few days after this I. saw Mr. Haight, and he told me Isaac had been there to try to get a school for Miss Khicker bocker. He then said Isaac swore false in that.” I have not given all the testimony of these witnesses, but all, as I conceive, bearing on the points now under examination. So it must be understood, I think, that the charge of false swearing was made in relation to the plaintiff’s statement, on his examination before Esq. Cole, that he had not been to Crescent to try to get a school for Miss Knickerbocker. This part of the plaintiff’s testimony he asserted was false—that in this he swore to a lie. The question then is, was this part of the plaintiff’s testimony material to the issue in the suit before Esq. Cole ? That was an action by Miss Benedict against the trustees of the school district. The complaint stated that the trustees employed the plaintiff, Miss Benedict, to keep school from April 27th to October 13th, at two dollars per week—that she kept the school under the contract until the 15th May, when the defendants, the trustees, dismissed her,. and refused to permit her to fulfil the contract, to her damage of fifty dollars. The defendant denied each and every allegation of the complaint, and also averred that the plaintiff quit voluntarily; and further, that she, had been settled with and paid. On these pleadings the trial "before Esq. Cole proceeded. It is plain that there was no issue before Esq. Cole, to which the testimony charged as false could be pertinent or material. Whether or not Mr. Wilbur had been to Crescent to try to get a school (or the school) for Miss Knickerbocker, was of no importance whatever. What "he did say on that subject, as to which it was charged he swore falsely—swore to a lie—did not tend to prove or disprove any averment either in the complaint or answer. It was quite too remote, even if drawn, out for the purpose of affecting his credibility. Whatever might have been his answer in that regard, he could not have been contradicted, and if false, perjury could not have been predicated thereon (Ross v. Rouse, 1 Wend., 475 ; Roberts v. Champlin, 14 Wend., 120; Crookshank v. Gray and wife, 20 Johns., 344). In Ross v. *279 Rouse, the latter was called as a witness to prove conversations and agreements between the parties, previous to a contract being drawn up and executed. Ross, in speaking of Rouse’s testimony in that regard said, “Every word you have sworn to is "false also, “ A. Rouse has sworn to a lie, and I can prove it.” Here Rouse supposed he was giving material evidence when he was examined, and Ross clearly intended to charge him with the crime of perjury, yet the court héld that slander could not be maintained. In Crookshank v. Gray and wife, the former said of. Mrs. Gray that she had sworn to a lie. It seems there had been a trial before a justice of the peace. The action was trespass to recover damages for setting dogs on the plaintiff’s cattle, and worrying them so that one of them died. Mrs. Gray was sworn as a witness, and testified that she saw the defendants’ dog, worrying the plaintiff's steer, in the comer of the defendants’ lot, nearest to the plaintiff’s house: and that "she was standing in the house, and the distance to the corner of the lot of the defendant was about thirty rods, and there were no trees or bushes in the way to obstruct her view. Crookshank, speaking of her testimony as to the distance at which she saw the dogs worrying the steer, said, she had sworn to a lie. Here again, doubtless, all parties supposed at the time Mrs. Gray was giving her testimony, and at the time of the uttering of the defamatory words, that her statement as to the distance mentioned by her was material to the case on trial, and Crookshank evidently intended to charge upon Mrs. Gray the crime of perjury. So, too, the hearers must have understood the charge to import to her that crime. Yet the court held that slander could not be maintained, and for the reason that the supposed .defamatory words related to an immaterial statement, on which perjury could not be predicated.
These cases have not been overruled : on the contrary, they have often been cited as sound in principle. According to these authorities, as well as the others above cited, the point taken by the defendant’s counsel on the trial, and there reserved by consent of parties, was well taken. Tire motion for judgment on the verdict .must, therefore, be denied, and the plaintiff’s complaint must be dismissed.
I have arrived at this conclusion reluctantly, as I can well see that the words charged were calculated to injure the plain *280 tiff in public esteem, and to excite painful reflections. The defendant was persistent in his charges, and refused to withdraw them when a conciliatory and neighborly application was made" to him for that purpose. He doubtless intended all which his words implied in their ordinary meaning, as understood by persons unacquainted with the technicality under which he escapes legal responsibility: still I must adhere to the settled rules and principles of law. The plaintiff must be satisfied with the cer- ,, tifie ate afforded by the verdict of the jury, which exonerates him from all moral guilt, and stigmatizes the charge against his character as malicious and false, although he cannot hold it as an indemnity for his expenses in seeking a public vindication of his integrity.
The motion for non-suit must prevail.